IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MARWAN MOUSLEH,

      Plaintiff,

  v.

GLADSTONE AUTO, LLC,

      Defendant.

No. 03:10-CV-1562-HZ

OPINION & ORDER


Aaron W. Baker
Attorney at Law
650 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

  Attorney for Plaintiff

Heather A. Bowman
Molly Jo Mullen
Bodyfelt Mount Stroup & Chamberlain
707 SW Washington Street, Suite 1100
Portland, OR 97205

  Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Marwan Mousleh brought this race discrimination case against Defendant Gladstone Auto, LLC. Defendant moves for summary judgment on all claims. The motion is granted in part and denied in part.

BACKGROUND

Plaintiff Marwan Mousleh worked for Defendant Gladstone most recently from April 14, 2009 until he quit in December 27, 2009. Elder Decl. ¶ 4. Mousleh had worked for Gladstone twice before, quitting both times. Id. Mousleh's complaint states he is African American, though he concedes that he is not. Pl.'s Memo. Resp. Mot. Summ. J. ("Mousleh Resp."), 12. Mousleh was born in Palestine and is an U.S. citizen. Decl. Aaron Baker Supp. Mousleh Resp. ("Baker Decl.") Ex. 4 at 54-55.

Plaintiff cites to several incidents in support of his case. In 2009, several sales managers and general sales manager Rich Stiefel criticized Plaintiff's mistakes in his work by saying "[t]his is not the West Bank." Decl. Heather Bowman Supp. Mot. ("Bowman Decl.") Ex. 1 at 2-3. In April or May 2009, Plaintiff complained to David Elder, general manager at Defendant Gladstone, that co-workers made fun of his face with comments like "[o]n my chinny chin chin" or "[w]hat's up with the long face"? Id. at 15.

In May 2009, Plaintiff found a note in his work mailbox with a drawing of a man in a noose and the statement "[a] good Palestinian is a dead one". Id. at 10-13. Plaintiff received two more notes in his work mailbox. One had a drawing of a man having sex with a camel with the words "Arabi", "Fuckari", "Jacki", and "Filistini". Id. at 17, 19. The other had a picture of a person throwing a rock at a tank and the soldier saying "You're still here. There's no Palestine. Only Israel." Id. at 21. Plaintiff reported the notes to Elder, but Elder disputes this fact. Id. at

2 - OPINION & ORDER

10, 20, 22; Decl. David Elder Supp. Mot. Summ. J. ("Elder Decl.") ¶ 16. Plaintiff stated that Elder was mad about Plaintiff's complaints, said that he whined like his daughter at home, and told him to go back to work. Bowman Decl. Ex. 1 at 10, 21, 24.

In the summer of 2009, Rich Stiefel, the general sales manager of Gladstone, ordered pepperoni pizza for the sales staff. Elder Decl. ¶ 11. Plaintiff eats pork, but complained to Stiefel on behalf of the Muslim employees who could not eat pork because of their religion. Bowman Decl. Ex. 1 at 24-25. Stiefel's reaction was that the Muslims had to eat the pepperoni pizza if they wanted to eat. Id. at 25.

On another occasion in 2009, Stiefel had a conversation with Plaintiff, during which Stiefel pointed at a customer wearing a head scarf and blamed the 9/11 attack and the bad economy on people like her. Id. at 27-28. Plaintiff also described Stiefel as saying "[a]lert, alert, 9-1-1, 9-1-1." Id. at 29.

On October 2nd, Plaintiff and a co-worker, David Giraldo, were involved in a name-calling incident. Giraldo called Plaintiff a "camel jockey" and a "sand nigger". Id. at 31. Plaintiff told Elder about the incident. Id. at 32. Elder was frustrated and told Plaintiff to stop whining. Id. Elder told Plaintiff to either quit or move to the north lot, a smaller car lot located north of the main dealership. Id. Elder reprimanded both Plaintiff and Giraldo, though Plaintiff protested because he felt he was the victim. Id. at 34. Plaintiff states that Giraldo had called him "camel jockey" once or twice a week and ridiculed his chin, but did not specify a time period. Id. at 36.

After Plaintiff moved to the north lot, on December 13th, Giraldo approached Plaintiff at the north lot with a McDonald's bag. Id. at 39. He said "You motherfucker, I got your dinner right here." and then dropped the bag into a garbage can next to Plaintiff. Id.

3 - OPINION & ORDER

There are several other undated incidents that Plaintiff mentions. Elder made comments about the bombing of Gaza, stating that if the Palestinians gave up, the Israelis would not have an excuse to use them as target practice. Baker Decl. Ex. 4 at 64-65. In another instance, Plaintiff went to grab a key to show a customer a car. Id. at 62. Co-worker Zac Caverhill prevented him from getting the key by squeezing him from behind to the point that Plaintiff heard a "pop". Id.

Plaintiff quit working at Defendant Gladstone, telling Elder that he was not making enough money. Elder Decl. Ex. 5. His last day was December 27, 2009. Id.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts

in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff Mousleh brings state and federal claims against Defendant Gladstone for race discrimination, hostile work environment, and retaliation in violation of ORS § 659A.030 and 42 U.S.C. § 1981.

I.      Statute of Limitations

Plaintiff concedes that the evidence is limited to Plaintiff's most recent employment period, even though he had worked for Defendant twice before.  Mousleh Resp., 13.  For section 1981 claims, the statute of limitations is provided by state law.  Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462 (1975).  Oregon has a two-year statute of limitation for injuries not arising from a contract.  ORS § 12.110(1).  Plaintiff filed his complaint on December 23, 2010.  Therefore, incidents that occurred before December 23, 2008 are barred.  Because Plaintiff's start date was April 14, 2009, all incidents in Plaintiff's most recent employment period are within the statute of limitations.  Def.'s Memo. Supp. Mot. Summ. J. ("Gladstone MSJ"), 12.

Plaintiff's state claims under ORS § 659A.030 is governed by a separate statute of limitations.  Claims under ORS § 659A.030 have a one-year statute of limitations.  ORS §

5 - OPINION & ORDER

659A.875(1). Thus, incidents that occurred before December 23, 2009 cannot be used to support Plaintiff's state claims.

Plaintiff argues that the continuing tort doctrine applies in his case, such that all the incidents may be considered for his state claims. "A continuing tort is based on 'the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct.'" Barrington v. Sandberg, 164 Or. App. 292, 296 (1999) (quoting Davis v. Bostick, 282 Or. 667, 671 (1978)). Where the evidence is that a plaintiff was harmed by each act in a series, the continuing tort theory does not apply. Id. at 297, (citing Davis, 282 Or. at 674-75); see also Griffin v. Tri-Met, 112 Or. App. 575, 581-82 (1992) (finding that each incident of a series did not by itself support a claim, but the incidents as a whole were a systematic pattern of conduct that led to a specific injury), rev'd in part on other grounds, 318 Or. 500, 870 P.2d 808 (1994).

Under this doctrine, "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges', while 'a hostile work environment claim … will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period'[.]" Lyons v. England, 307 F.3d 1092, 1105-1106 (9th Cir. 2002) (quoting AMTRAK v. Morgan, 536 U.S. 101, 113 (2002)). Thus, if applicable, the continuing tort doctrine would only apply to Plaintiff's state hostile work environment claim for incidents that were part of a systematic pattern of conduct that resulted in an injury.

Plaintiff has not recounted any incidents that occurred from December 23rd to December 27th. As a result, there is no evidence to support Plaintiff's state claims within the actionable time period. The continuing doctrine theory is also inapplicable because there is not a single

6 - OPINION & ORDER

incident to anchor the prior incidents into the actionable time period. Therefore, for Plaintiff's state claims, all incidents prior to December 23, 2009 are barred by the one-year statute of limitations. Because there is no evidence within the actionable time period, Defendant's motion is granted on the state claims for disparate treatment discrimination, hostile work environment, and retaliation.

II.     Discrimination

There are three types of discrimination claims under ORS § 659A.030 and 42 U.S.C. § 1981: disparate treatment, hostile environment, and retaliation. The substantive analysis for all three types of claims under the statutes is the same. Campbell v. Knife River Corp. - Northwest, 783 F. Supp. 2d 1137, 1147 (D. Or. 2011) (standard for establishing a prima facie case of discrimination under ORS § 659A.030 is identical to that used to establish a prima facie case of discrimination under Title VII); Manatt v. Bank of America, NA, 339 F.3d 792, 797 (9th Cir. 2003) ("legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action"); Logan v. West Coast Benson Hotel, 981 F. Supp. 1301, 1319 (D. Or. 1997) (discrimination claims under Chapter 659 are "wholly integrated and related" to Title VII).

There are two ways that Plaintiff may establish a prima facie case of discrimination. Plaintiff may present evidence of discriminatory intent that gives rise to an inference of unlawful discrimination. Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1149 (9th Cir. 1997) (referring to an employee as a "dumb Mexican" is direct evidence). Alternatively, Plaintiff may show that (1) he belonged to a protected class, (2) was qualified for the position in question, (3) was subjected to an adverse employment action, and (4) others who were not in the protected class were treated more favorably. E.g., Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002)

7 - OPINION & ORDER

(citations omitted).  Establishing a prima facie case creates a presumption of unlawful discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If a prima facie case is established, the burden of production shifts to the defendant, who must show evidence that the adverse action was taken for other than impermissibly discriminatory reasons.  See id.  If the defendant produces such evidence, the presumption of unlawful discrimination disappears, and the plaintiff must show by a preponderance of the evidence that the employer's proffered reason was merely a pretext for a discriminatory motive.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citing Lowe v. City of Monrovia, 775 F.2d 998, 1007 (9th Cir. 1985)).

To do so, the plaintiff cannot simply rely upon the prima facie case and deny the credibility of the defendant's witnesses.  Id. at 890 (citing Schuler v. Chronicle Broadcasting Co., Inc., 793 F.2d 1010, 1011 (9th Cir. 1986)).  Instead, the plaintiff must produce "specific, substantial evidence of pretext."  Wallis, 26 F.3d at 890 (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983)).  Pretext may be established either by showing that "a discriminatory reason more likely motivated the employer or ... that the defendant's proffered explanation is unworthy of credence."  Chuang v. University of California Davis, 225 F.3d 1115, 1123 (9th Cir. 2000).  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated always rests with the plaintiff.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142-43 (2000).

### A. Disparate Treatment

Plaintiff claims race discrimination in violation of § 1981 and ORS § 659A.030 because he is African American.  Plaintiff simply argues that there is direct evidence of discrimination shown by Plaintiff "being harassed by management, not receiving car deals, comments and

8 - OPINION & ORDER

yelling by management, and being physically assaulted." Mousleh Resp., 11.  Plaintiff does not cite to evidence in support of this argument, nor is race implicated by these general allegations.  I cannot find that there was any evidence of direct discrimination based on this brief, and unsupported, argument.

Alternatively, to establish a prima facie case of race discrimination, Plaintiff can show (1) that he is African-American; (2) that he performed his job adequately; (3) that he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated differently.  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1031 (9th Cir. 2006).  Defendant argues that Plaintiff cannot prove the first, third, and fourth elements.

First, Defendant challenges that Plaintiff is African American.  Plaintiff admits that he is Palestinian, not African American.  Bowman Decl. Ex. 1 at 46-47.  Plaintiff argues that this "erroneous" allegation may be cured by an amendment to change his race to "Arabic".  Mousleh Resp., 12.  Arabs, along with other ethnic groups, have been recognized as a separate race.  <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 612 (1987).  Section 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  <u>Id.</u> at 613.  However, it is important that Plaintiff was "subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion".  <u>Id.</u>

Defendant argues that Plaintiff's proposed amendment is untimely and that discovery has closed.  Gladstone MSJ Reply, 2-3.  Undue delay is just one of several factors for considering whether to allow an amendment to correct Plaintiff's race.  If an amendment were allowed, it is unlikely that additional discovery would be necessary.  The complaint pled race discrimination

9 - OPINION & ORDER

and both parties have proceeded with this knowledge.  Both parties are well aware of the factual allegations that form the basis of this case.

Even if Plaintiff had pled his race correctly as "Arabic", Defendant further argues that there is no evidence to support the last two elements—that Plaintiff suffered an adverse employment action or that similarly situated individuals outside of his protected class were treated differently.  An adverse employment action "materially affects the compensation, terms, conditions, or privileges of employment."  Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quotation, brackets, and ellipsis omitted).  Adverse employment actions include subjecting an employee to verbal and physical abuse, discriminatory overtime, and termination. Kang v. U. Lim Am., Inc., 296 F.3d 810, 818-19 (9th Cir. 2002); see also Chuang, 225 F.3d at 1123 (relocation and reduced size of research space were adverse employment actions). However, there is no adverse employment action when a job demotion is not accompanied by a salary or status change, or any indication that the new position is less favorable.  Campos v. Portland Public Schs., No. 99-1744-MA, 2000 U.S. Dist. Lexis 21617, at *16-17 (D. Or. Nov. 9, 2000).

Plaintiff argues two adverse employment actions: (1) "harassment" and Defendant's failure to address the "complaints of harassment" and (2) Plaintiff's move to the north lot, which resulted in lost car deals and not being able to work at the main dealership.  Mousleh's Resp., 11. First, Plaintiff fails to argue the specific incidents of "harassment" in support of his claim.  The court cannot guess, among the multitude of incidents described, which incident of harassment was an adverse employment action.  Plaintiff has the responsibility to cite to "particular parts of the materials in the record" when arguing that a fact is not true or is genuinely disputed.  Fed. R.

10 - OPINION & ORDER

Civ. P. 56(c).  Plaintiff's complaint is similarly unhelpful.  Plaintiff's argument of "harassment" as an adverse employment action fails.

As for Plaintiff's move to the north lot, Plaintiff argues that Elder gave him the choice of quitting or moving to the north lot after he complained about the name-calling incident with co-worker Giraldo.  This fact is undisputed.  It is also undisputed that Plaintiff's income remained consistently high after the move and that the dealership's number one salesman is often from the north lot.  Elder Decl. ¶ 13.  Plaintiff must also show that he was treated differently than similarly situated individuals outside of his protected class.  Plaintiff has not presented any evidence of such.  Defendant's motion is granted regarding Plaintiff's § 1981 disparate treatment discrimination claim.

      B.      Hostile Work Environment

To establish a prima facie case for a hostile work environment claim, Plaintiff must show (1) he was subjected to verbal or physical conduct based on his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.  Surrell v. California Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).  The workplace must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Nichols v. Azteca Rest. Enters., 256 F.3d 864, 871-72 (9th Cir. 2001).  "In evaluating the objective hostility of a work environment, the factors to be considered include the 'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

11 - OPINION & ORDER

performance.'" McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004) (quoting Nichols, 256 F.3d at 872).

Furthermore, "[s]imply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment". McGinest, 360 F.3d at 1113. However, it is sufficient to show that the conduct "pollute[d] the [plaintiff's] workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." Id. (quotations omitted). In short, the "conduct must be extreme to amount to a change in the terms and conditions of employment". Faragher, 524 U.S. at 788.

Defendant disputes the first and third elements—that Plaintiff was subjected to verbal or physical conduct based on his race or that the conduct was sufficiently severe or pervasive. Like his disparate treatment discrimination claim, Plaintiff fails to state the specific incidents in support of his hostile work environment claim. Plaintiff simply argues that there is "ample evidence" to show that the work environment was hostile. Mousleh Resp., 15. Again, it is Plaintiff's responsibility to direct the court to the evidence that supports a particular claim. A reference to "ample evidence" in the prior fact section of Plaintiff's brief is insufficient.

That said, given the nature of a hostile work environment claim, I am obligated to consider all the circumstances in determining whether the harassment was sufficiently severe or pervasive to alter the conditions of employment. In light of the numerous incidents that Plaintiff has recounted, I find that a reasonable trier of fact could conclude that Plaintiff was subjected to a hostile work environment because of his race. Defendant's motion is denied regarding Plaintiff's § 1981 hostile work environment claim.

/ / /

/ / /

    C.    Retaliation

To establish a prima facie case of retaliation, Plaintiff must prove (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two. <u>Surrell</u>, 518 F.3d at 1109. The definition of an adverse employment action in a retaliation claim is broader than that for a disparate treatment discrimination claim. <u>Burlington N. & Santa Fe Rwy Co. v. White</u>, 548 U.S. 53, 60-63 (2006). An adverse employment action is broadly defined as an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination". <u>Id.</u>; <u>see also</u> <u>Manatt</u>, 339 F.3d at 800 (adverse employment action is "any employment decision 'reasonably likely to deter employees from engaging in protected activity.'") (quoting <u>Ray v. Henderson</u>, 217 F.3d 1234, 1243 (9th Cir. 2000)). However, "only non-trivial employment actions" can support a retaliation claim. <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928 (9th Cir. 2000). For example, "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion" would be considered adverse employment actions. <u>Id.</u>

Plaintiff does not specifically state evidence in support of his argument. Plaintiff simply argues that "[t]he record reveals several complaints from [Plaintiff] presented to top management." Mousleh Resp., 16. Plaintiff also states that "Defendant's verbal attacks of [Plaintiff] and lack of responsive action to investigate complaints" supports his claim. <u>Id.</u> There is evidence that after Plaintiff complained to Elder about the name-calling incident, he was given the choice to quit or move to the north lot. Plaintiff's move to the north lot soon after could be viewed as a retaliatory act due to his complaint. Defendant's motion is denied regarding Plaintiff's § 1981 retaliation claim.

III.  Motion to Strike

Defendant moves to strike statements that Plaintiff says were made to him by other employees of Defendant Gladstone. In his brief, Plaintiff argues that "[he] had learned from a co-worker, Nidhal, that he had also complained about the same behavior by [Giraldo] to Elder and nothing had been done. Co-worker Adel also informed [Plaintiff] he had experienced offensive treatment at Defendant's workplace." Mousleh Resp., 4. Defendant objects to these statements as hearsay. Plaintiff supports these statements with his deposition testimony, rather than testimony from Nidhal or Adel, to prove the truth of the matter stated. Defendant's hearsay objection is sustained.

## CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment is granted in part and denied in part as follows: granted for Plaintiff's state claims for disparate treatment discrimination, hostile work environment, and retaliation; granted for Plaintiff's § 1981 disparate treatment discrimination claim; and denied for Plaintiff's § 1981 hostile work environment and retaliation claims.

IT IS SO ORDERED.

Dated this 3 day of July, 2012.

*Marco Hernandez*
MARCO A. HERNANDEZ
United States District Judge

14 - OPINION & ORDER